**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **Chapter 11** |
| | § | |
| **KALERA INC.,** | § | **Case No. 23-90290 (CML)** |
| | § | |
| **Debtor.** | § | |
| | § | |
| **Douglas Brickley, as Liquidating Trustee** | § | |
| **to the Kalera Inc. Liquidating Trust** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Adv. No.   Refer to Summons** |
| | § | |
| **Compeer Contract Cleaning Services LLC** | § | |
| | § | |
| **Defendant.** | § | |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§
547, 548, AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

Douglas Brickley, as Liquidating Trustee (the "Plaintiff" or "Trustee") to the Kalera Inc.

Liquidating Trust (the "Trust"), by and through his undersigned counsel, files this complaint (the

"Complaint") to avoid and recover transfers made by Kalera, Inc. (the "Debtor") to Compeer

Contract Cleaning Services LLC (the "Defendant") and to disallow any claims held by Defendant.

In support of this Complaint, Plaintiff alleges the following upon information and belief:

**NATURE OF THE CASE**

1.      Plaintiff seeks to avoid and recover from Defendant, or from any other person or

entity for whose benefit the transfers were made, all (a) preferential transfers of property that

occurred during the ninety (90) day period prior to the commencement of the bankruptcy

proceedings of the Debtor pursuant to sections 547 and 550 of chapter 5 of title 11 of the United

1

States Code (the "Bankruptcy Code") and, subject to proof, (b) any transfers that may have been fraudulent conveyances pursuant to sections 548 and 550 of the Bankruptcy Code.

2.     In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of Plaintiff's rights and the rights of the Debtors to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

**JURISDICTION AND VENUE**

3.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b). The underlying bankruptcy case is captioned *In re Kalera, Inc.*, Case No. 23-90290 (CML).

4.     This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

5.     Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1409(a).

6.     The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7.     Pursuant to Local Bankruptcy Rule 7008-1, Plaintiff states that he does consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**PROCEDURAL BACKGROUND**

8.       On April 4, 2023 (the "Petition Date"), Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code.

9.       On October 20, 2023, the Debtor filed its *Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation of Kalera, Inc. Proposed by the Debtor and the Official Committee of Unsecured Creditors* [Docket No. 401] (the "Plan").

10.       November 30, 2023, the Bankruptcy Court entered the *Order Approving Disclosure Statement on a Final Basis and Confirming Amended Joint Chapter 11 Plan of Liquidation of Kalera, Inc. Proposed by the Debtor and the Official Committee of Unsecured Creditors* [Docket No. 453] (the "Confirmation Order"), confirming the Plan.

11.       On March 18, 2024, the Effective Date (as defined in the Plan) of the Plan occurred [Docket No. 474] and the Trust was formed pursuant to the terms and conditions of the Confirmation Order, the Plan, and that certain Liquidating Trust Agreement and Declaration of Trust dated October 12, 2023 (the "Trust Agreement").[1]

12.       Pursuant to paragraph 10 of the Confirmation Order and Sections VIII, IX (B), IX (D) and X (B) of the Plan, the Liquidating Trust Assets (as defined in the Plan), including all Liquidating Trust Causes of Action under Chapter 5 of the Bankruptcy Code, were transferred to the Trust and the Trust is authorized to pursue all causes of action after the Effective Date.

13.       Pursuant to Section VII(a) of the Plan, General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid in full.

**THE PARTIES**

---

[1] *See* Case No. 23-90290, D.E. 427-2, Ex. 2. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Confirmation Order, and/or Trust Agreement.

14. Pursuant to the Plan, Confirmation Order, and Trust Agreement, Plaintiff was appointed as the Trustee. Plaintiff is authorized and has standing, among other things, to prosecute and settle certain causes of action under chapter 5 of the Bankruptcy Code, including this avoidance action.

15. Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that provided cleaning services to or for the Debtor. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 2453 Landfill Rd. Pelham, GA 31779. Plaintiff is informed and believes and, on that basis, alleges that Defendant is a limited liability company residing in the State of Georgia.

## FACTUAL BACKGROUND

16. As more fully discussed in the Plan, the Debtor was an agricultural business focused on the development and implementation of ecologically-friendly technology, including the development of proprietary seeds and vertical hydroponic farming equipment and techniques. Debtor utilized proprietary technology and plant and seed science to sustainably grow greens year round for retail and food service markets. It provided its produce to food distribution and grocery store chains such as US Foods, Inc., H-E-B Grocery Company LP, Kroger Company, Safeway, Inc., and other various small food distributors located within the United States.

17. As of the Petition Date, the Debtor operated large-scale vertical farms in Houston, Texas and Denver, Colorado as well as a small-scale hydroponic farming facility located at the Marriott World Center in Orlando, Florida. Further, the Debtor had two additional operable facilities, Orlando, Florida and Atlanta, Georgia, where operations had been halted prior to the Petition Date and two additional non-operable facilities located in Seattle, Washington and St. Paul, Minnesota that were in various stages of development.

18.     Prior to the Petition Date, the Debtor and its affiliates incurred a $7.5 million deficit as a result of expenses related to the Debtor's Business Combination (defined in Plan), and it has incurred additional operating losses since. Due to this deficit, the Debtor was faced with a desperate need to either cease its plans for growth and restructure to become cash flow positive or attempt to raise additional capital to maintain existing expansion plans and operations. As a result of the Debtor's deteriorating liquidity position and cash reserves, the Debtor retained professionals to advise and assist it in addressing its liquidity position by exploring options to attract new capital, restructuring existing obligations, and pursuing a sale of its assets.

19.     The Debtor's financial difficulties that led to the decision to file for chapter 11 bankruptcy protection are attributable to a combination of factors, both company-specific and market related, all of which placed significant stress on the Debtor's liquidity position in the months leading up to the Petition Date. A summary of the Debtor's prepetition operations, debt structure, and factors that led to the Bankruptcy Case are set forth in the Plan and are incorporated herein by reference.

20.     As of the Petition Date, the Debtor utilized a cash management system (the "Cash Management System") for the collection, transfer, and disbursement of funds in the Debtor's business.[2] As of the Petition Date, the Cash Management System consisted of six (6) bank accounts (the "Bank Accounts") maintained by the Debtor's at PNC Bank (PNC) and  Bank of America ("BOA").

21.     Among these Bank Accounts, Debtor had one primary corporate checking account at BOA, account number ending 5528,  from which  Debtor received receipt of funds

---

[2] *See Debtor's Emergency Motion For Entry of an Order Pursuant to 11 U.S.C. §§ 105(a), 345(b), 363 and 364 Authorizing: (I) The Continued Use of the Debtor's Prepetition Cash Management System, and (II) Opening New Debtor In Possession Accounts, If Necessary*, incorporated herein by reference (the "Cash Management Motion") [Case No. No. 23-90290, D.E. 10].

from its customers and made disbursements to its vendors.  (the "Disbursement Account"). [*See* Cash Management Motion].  The Debtor drew upon the Disbursement Account to pay for its operational costs, including payment to its vendors, suppliers, distributors, and other creditors, including Defendant.

22.     During the ninety (90) days before the Petition Date, that is between January 4, 2023 and April 3, 2023 (the "Preference Period"), the Debtor continued to operate its business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, credit card payment, or otherwise to various entities.

23.     Upon information and belief, during the course of their relationship, the Defendant and the Debtor entered into agreements, which are evidenced by invoices, communications, and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant to the Debtor as described in the "Parties" section of this Complaint. The payments to the Defendant in respect of the Agreements during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," and "Invoice Amount."

24.     The Debtor made transfer(s) of an interest of the Debtor's property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than $97,734.10 (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A attached hereto and incorporated by reference. Such details include "Transfer Number," "Transfer Amount," "Date Paid," "Debtor Transferor and Transferee."

25.      Plaintiff is seeking to avoid all of the transfers of an interest of the Debtor's property made by the applicable Debtor to Defendant within the Preference Period.

6

26.     On or about March 6, 2025, Plaintiff, through counsel, sent a demand letter (the "Demand Letter") to Defendant, seeking a return of the Transfer(s).

27.     Based upon Plaintiff's review of the information, if any, provided by Defendant prior to filing this Complaint, and after performing Plaintiff's own due diligence evaluation of the reasonably knowable affirmative defenses to avoidance of the Transfer(s), Plaintiff has determined that Plaintiff may avoid some or all of the Transfers even after taking into account Defendant's alleged affirmative defenses.

28.     During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtor of an interest of the Debtor in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

<u>**CLAIMS FOR RELIEF**</u>

<u>**COUNT I**</u>
**(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

29.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are consistent with allegations contained in this First Claim for Relief.

30.     As more particularly described on Exhibit A attached hereto and incorporated herein, during the Preference Period, the Debtor identified on Exhibit A made Transfers to or for the benefit of Defendant in an aggregate amount not less than $97,734.10.

7

31. Each Transfer was made from the Disbursement Account described *supra,* and constituted transfers of an interest in property of the transferring Debtor as identified on <u>Exhibit A</u>.

32. Defendant was a creditor at the time of each Transfer by virtue of supplying the Debtor identified on <u>Exhibit A</u> the goods and/or services identified in this Complaint and in the Agreements, as more fully set forth on <u>Exhibit A</u> hereto, for which the Debtor identified on <u>Exhibit A</u> were obligated to pay following delivery in accordance with the Agreements.

33. Each Transfer was to or for the benefit of a creditor within the meaning of section § 547(b)(1) of the Bankruptcy Code because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor(s) identified on <u>Exhibit A</u> to Defendant.

34. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor identified on <u>Exhibit A</u> to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring Debtor as set forth on <u>Exhibit A</u> hereto.

35. Each Transfer was made while the Debtor was insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

36. Each Transfer was made during the Preference Period, as set forth on <u>Exhibit A</u>.

37. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtor's cases were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying bankruptcy case

as well as the proofs of claim that have been received to date, the Debtor's liabilities exceed their assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's bankruptcy estates.

38.     In accordance with the foregoing, each Transfer is avoidable pursuant to section 547(b) of the Bankruptcy Code.

## COUNT II
### (Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))

39.     Plaintiff hereby incorporates all previous allegations as though fully set forth herein, to the extent they are not consistent with allegations contained in this Second Claim for Relief.

40.     To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently received, or was a transfer made by the Debtor without a corresponding transfer into the payment account by the Debtor incurring the debt, Plaintiff pleads in the alternative that the Debtor making such transfer(s) did not receive reasonably equivalent value in exchange for such transfer(s) (the "Potentially Fraudulent Transfers"); and

A.     The Debtor was insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

B.     The Debtor was engaged, or about to engage, in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital; or

C.     The Debtor intended to incur, or believed it would incur, debts beyond its ability to pay upon maturity.

41.     Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

## COUNT III
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

42.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are consistent with allegations contained in this Count.

43.     Plaintiff is entitled to avoid the Transfer(s) payment to section 547(b) of the Bankruptcy Code and/or any Potentially Fraudulent Transfers pursuant to section 548 of the Bankruptcy Code (collectively, the "Avoidable Transfer").

44.     Defendant was the initial transferee of the  Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

45.     Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

## COUNT IV
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j)

46.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are consistent with allegations contained in this Claim for Relief.

47.     Defendant is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

48.     Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under section 550 of the Bankruptcy Code.

49.     Pursuant to section 502(d) of the Bankruptcy Code, any and all Claims of Defendant and/or its assignee, against the Debtor's chapter 11 estates or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

10

50.     Pursuant to section 502(j) of the Bankruptcy Code, any and all Claims of Defendant, and/or its assignee, against the Debtor's chapter 11 estates or Plaintiff previously allowed by the Debtor or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following relief against Defendant:

A.     On Plaintiff's First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to sections 547(b), 548, and 550(a) of the Bankruptcy Code, plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B.     On Plaintiff's Fourth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Debtor until Defendant returns the Avoidable Transfers to Plaintiff pursuant to sections 502(d) and (j) of the Bankruptcy Code; and Granting Plaintiff such other and further relief as this Court may deem just and proper

Dated:  April 3, 2025

**DYKEMA GOSSETT PLLC**


By:  */s/ Nicholas Zugaro*
Nicholas Zugaro
Texas State Bar No. 24070905
S.D. Tex. Id. 1054893
Kim Lewinski
Texas State Bar No. 24097994
5 Houston Center
1401 McKinney Street, Suite 1625
Houston, Texas  77010
Telephone:  (713) 904-6900
nzugaro@dykema.com
klewinski@dykema.com

**COUNSEL TO DOUGLAS BRICKLEY AS LIQUIDATING TRUSTEE TO THE KALERA, INC. LIQUIDATING TRUST**


<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on this 3rd day of April 2025, the foregoing document was filed with the Court and served via the Court's CM/ECF system to all of the parties registered to receive such notice.



*/s/ Nicholas Zugaro*
Nicholas Zugaro



124505.000001  4898-8564-6641.1

12